IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK and CHARLENE ADAMSON, Administrators of the Estate of Timothy Adamson,     Plaintiffs,         vs. <br><br>PATENT CONSTRUCTION SYSTEMS; SCRUBGRASS GENERATING CO., L.P.; JOHN DOE GENERAL CONTRACTING; JANE DOE SUBCONTRACTING;     Defendants. | Civil Action No. 05-1053<br>Judge Terrence F. McVerry<br><br>Magistrate Judge Lisa P. Lenihan |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendant Patent Construction Systems ("Employer") be granted.

### II. REPORT

This case involves wrongful death and survival actions brought by Patrick and Charlene Adamson ("Plaintiffs"), as Administrators of the Estate and arising from the death of their son, Timothy Adamson ("Timothy"), who fell to his death from scaffolding while working at a construction site.[1]  Plaintiffs assert that their son's death resulted from the Defendants'

---

[1] In addition to his parents, Timothy is survived by his two brothers, Patrick and Scott, who continue to reside at home with their parents.

intentional negligence, recklessness, conscious disregard of his safety, and from their willful violation of OSHA safety regulations.  More specifically, they assert that Timothy, a boilermaker's apprentice with no scaffolding training,  was working on 64' high scaffolding without a safety harness, life-line or safety net because of the Defendants' construction pace and cost priorities.  Employer has moved to dismiss the claims against it asserting that they are precluded by the Pennsylvania Workers' Compensation Act, 77 P.S. § 481(a).

Other courts and numerous commentators, as well as several members of the Pennsylvania judiciary, have expressed their disagreement with, and thoughtful concerns regarding the equities of, a law that precludes litigation against an employer in cases of intentional tort, and/or violation of federal or other safety regulations.  This remains, nonetheless, the law of the Commonwealth.  See Poyser v. Newman & Co., Inc., 522 A.2d 548 (Pa. 1987).  Accordingly, Employer's Motion to Dismiss must  be granted.

### A.  Statement of Facts and Procedural History

This case includes wrongful death and survival actions arising from  personal injuries sustained by Timothy Adamson on June 12, 2004, and from which he died two days thereafter.  Decedent was employed by Defendant Patent Construction Systems as a boilermaker's apprentice and was engaged in working on scaffolding constructed in connection with the refurbishment of an industrial boiler at a power-generating plant in Kennerdell, Pennsylvania.  Employer was a subcontractor on the site owned by Defendant Scrubgrass Generating Company

("Scrubgrass"), and had been engaged by the plant refurbishment project's general contractor, Defendant John Doe ("the GC").[2]

Another subcontractor, Defendant Jane Doe, had erected but failed to remove a section of scaffolding and Employer, at the direction of Scrubgrass and the GC, directed Timothy and two co-employees to dismantle the scaffolding. "Due to time pressure and/or budgetary constraints", these employees were directed to undertake this work without normal, appropriate and/or requisite safety measures, such as a lifeline and safety belt or safety net.[3] At approximately 7:00 a.m. on the morning of June 12, 2004, Timothy fell approximately 64' to the concrete below and, two days later, died of the multiple blunt traumas sustained. As Employer notes, workers' compensation death benefits in the amount of $8,890 were paid to the Estate and the Plaintiffs do not dispute receipt of this minimal measure of financial compensation.[4]

The Complaint was filed with this Court on July 29, 2005. Employer filed its Motion to Dismiss on September 8, 2005. Plaintiffs' Response was filed on October 20, 200,[5] and

---

[2] See Complaint at ¶¶ 11-18.

[3] See Complaint at ¶¶ 19-24.

[4] See Brief in Support of Motion to Dismiss at 4, n. 2 (also pointing out that medical benefits totaling $83,693.61 were paid to the health care providers).

It should be noted that the primary objective of the workers' compensation scheme is to restore a portion of lost earning capacity. Benefits are limited to a calculated percentage of wages, not to exceed a fixed maximum compensation rate or a fixed period. They include no compensation for, *e.g.*, pain and suffering.

[5] The discussion of a statutory employer's liability for Workers' Compensation benefits to subcontractors' employees contained in Plaintiffs' Response is inapposite to the question presently before this Court. That is, application of the Workers' Compensation Act to preclude recovery from Timothy's employer in no way turns on whether or not additional entities affiliated with the refurbishment project have tort liability. See Response at 1-3. Nor does the Response's

3

Employer replied on October 24, 2005.

### B. Standard of Review

In considering a Motion to Dismiss pursuant to Rule 12(b), the Court must accept all allegations in the complaint as true, and construe the facts set forth in the light most favorable to the Plaintiffs.  See, e.g., Gomez v. Toledo, 446 U.S. 635, 636 n. 3 (1980).

### C. Analysis

The Pennsylvania Workers' Compensation Act provides that

> [t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employee, his legal representative, . . . parents, . . . next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death . . . .

77 P.S. § 481(a).  The justice of this limitation is premised on its *quid pro quo* nature; that is, employers are subjected to a statutory, no-fault system of compensation for worker injuries but receive immunity from employee work-related injury lawsuits in return.[6]  As the Pennsylvania

---

discussion of the vicarious liability of the employer of an independent contractor address the question at hand.  See Response at 3-5.  Rather, these arguments regarding the potential liability of Defendants other than the Employer go solely to issues not presently before this Court on the Employer's Motion to Dismiss.

[6] See Snyder v. Specialty Glass Products, Inc., 658 A.2d 366, 369 (Pa. Super. 1995) ("In exchange for the right to compensation without the burden of establishing fault, employees give up their right to sue the employer in tort for injuries . . . ."); Alson v. St. Paul Insurance Cos., 612 A.2d 421, 424 (Pa. 1992) (explaining that "[t]he employee benefits from the expeditious payment of compensation, but forgoes recovery of some elements of damages").

When the Workers' Compensation Act was introduced early in the last century, its necessity and justice were readily apparent.  With expanding industrialization, increasing numbers of injured workers faced little hope of any financial recovery owing to the broad

Supreme Court understood it for many decades, the Act abrogated "the employer's liability as a tortfeasor *under the law of negligence* of injuries to his employees." Socha v. Metz, 123 A.2d 837, 840 (Pa. 1956) (emphasis added).[7]

Until 1972, the Workers' Compensation Act provided compensation benefits predicated

---

defenses - *e.g.*, assumption of the risk, fellow servant doctrine, and contributory negligence - protecting employers at that time. See 1 W. Skinner, The Workmen's Compensation Law of Pennsylvania 17 (4th ed. 1947) (discussing the legislature's intent to "correct the very generalized evils which existed under the common law"). The employees' exchange of (1) largely theoretical rights of recovery for employer negligence at common law for (2) assured minimal compensation for injury was, therefore, equitable. See Edward J. O'Connell, Jr., Note, Intentional Employer Misconduct and Pennsylvania's Exclusive Remedy Rule After *Poyser v. Newman and Co.*: A Proposal for Legislative Reform, 49 U. Pitt. L. Rev. 1127 (1988) (hereinafter "Intentional Employer Misconduct") (summarizing that Pennsylvania's Workers' Compensation Act was enacted in 1915 to address (1) an inadequate common law recovery for injured workers, owing to defenses then available to employer-defendants in negligence actions; (2) the absence of incentive for employers to improve workplace safety; and (3) the resultant social burden of increasing numbers of disabled workers). Cf. Kline v. Arden H. Verner Co., 469 A.2d 158, 160 (Pa. 1983) (noting that the Act had "deprived some of rights in exchange for surer benefits, immunized some, to make possible resources to benefit many, who where [theretofore] without possible or practical remedies").

Tort law has, of course, evolved significantly in the employees' favor since the inception of the Act. Cf. Birklid v. Boeing Co., 904 P.2d 278, 289-90 (Wash. 1995) (*en banc*) (observing that although in 1916 everyone may have "'agreed that the blood of the workman was a cost of production,' that statement no longer reflects the public policy or the law of [the state]") (quoting Stertz v. Indus. Ins. Comm'n, 158 P. 256 (Wash. 1916)).

[7] See also O'Connell, Intentional Employer Misconduct, 49 U. Pitt. L. 1127 (further noting that "original bargain" encompassed negligently caused workplace injuries rather than unequivocal insulation from all common law liability, and that injured workers never surrendered their right to recover for intentional injury); Thomas D. Schroeder, Note, Workers' Compensation: Expanding the Intentional Tort Exception to Include Willful, Wanton, and Reckless Employer Misconduct (hereafter "Workers' Compensation"), 58 Notre Dame L. Rev. 890, 892 (1983) (discussing history of worker's compensation and noting that the scheme was meant to provide compensation for injuries "thought to be naturally associated with the business operation"). Cf. Brady v. Safety-Kleen Corp., 576 N.E.2d 722, (Ohio 1991) ("It has been universally recognized, either by statute or judicial interpretation, that an exception to the exclusivity of workers' compensation exists for the employer's intentional wrongs.") (extensive citations to other states' precedents omitted).

upon a showing that the injury resulted from an "accident" in the course of employment. As a result, employees who were unable to trace their injury to a specific time or occurrence, *e.g.*, those with work-related diseases, faced unintended difficulties when seeking compensation,[8] and varying judicial interpretations began to create a morass. In response, the legislature amended the Act, clarifying that compensation was afforded to any employee injured "in the course of employment".

Prior to the 1972 amendments, the few Pennsylvania Courts to address the question recognized an intentional tort exception to the exclusive remedy provision. Pennsylvania Supreme Court cases were in tension, however, as to whether allegations of an employer's willful violation of safety regulations were sufficient, without more, to overcome immunity from suit under the Act.[9]

---

[8] See, *e.g.*, Mauchline v. State Ins. Fund, 124 A. 168, 169 (Pa. 1924) (denying compensation to employee whose emphysema resulted from prolong inhalation of smoke and fumes). See also Nat'l Comm'n On State Workmen's Compensation Laws (1972) (Report concluding that traditional accident test had "served to bar compensation for most diseases and for injuries which were considered routine and usual in the place of employment").

[9] More particularly, in a little-more-than-two-page opinion dealing primarily with the effect of the minor status of a deceased employee, the Pennsylvania Supreme Court held, without reference to the intentional tort exception, that the deceased employee's surviving parent could not maintain an action despite alleging the employer's willful and unlawful failure to provide safeguards on a conveyor system. See Evans v. Portland Cement Co., 252 A.2d 646 (Pa. 1969). The Evans Court stated that plaintiff's allegation of an exception for "wilful and unlawful violation of safety provisions" was "properly [given] short shrift" and that "even where neglect of a statutory duty is alleged, the employee's only remedy is under the [Act]." See 252 A.2d at 647-48. In so stating, Evans relied upon Hyzy v. Pittsburgh Coal Co., 121 A.2d 85 (Pa. 1956), in which a majority of the Pennsylvania Supreme Court affirmed dismissal of a negligence case brought by the surviving wife of a coal miner crushed to death after being assigned to work under an untimbered, deteriorated roof, in violation of general mine safety regulations. But see id. at 88 (Musmanno, J., dissenting) (citing the Court's prior holding in King v. Darlington Brick Mining Co., 131 A. 241, 242 (Pa. 1925) that the Act "does not debar an action of trespass where the injury results from the employer's violation of a statutory command"); id. at 89 (citing additional

In addition, the intentional tort exception was premised more expressly on use of the term "accident" in the statute's definition of compensable injury, rather than on the negligence scope of the Act's *quid pro quo*.  See  Lacey v. Washburn & Williams, 164 A. 724, 725 (Pa. 1933) (construing "accident" to mean an "unexpected and unforeseen" occurrence); Readinger v. Gottschall, 191 A.2d 694 (Pa. Super. 1963) (recognizing intentional tort exception for physical assault on employee);[10] Bussone v. Sinclair Refining Co., 234 A.2d 195, 198 (Pa. Super. 1967) (holding that heart attack following emotional stress of verbal assault by foreman in locked

---

Pennsylvania cases denying compensation to employees who were violating safety laws at time of injury and observing that "[i]t is not likely that the Legislature, in passing the . . . Act, intended to bar from compensation employees who violate safety laws and yet immunize employers from liability . . . when they ignore the same safety laws").  Cf. O'Connell, Intentional Employer Misconduct, 49 U. Pitt. L. Rev. at1136 (noting that "the Evans court was not faced with an allegation of intentionally tortious conduct directed specifically at the injured employee").

[10]  In Readinger, the Court reasoned that the Act "provide[s] for recovery of an injury arising out of an accident in the course of the employment.  Nothing is said in any of [its] provisions] about deliberate acts or assaults by the employer."  191 A.2d at 696.  See also Schroeder, Workers' Compensation, 58 Note Dame L. Rev. at 896 (similarly observing that (1) the statutes encompass, by definition, injuries "arising in the course of employment" and related thereto; and (2) "[n]egligence can be considered an inseparable aspect of the job, but intentional torts cannot").  Cf.  Note, Exceptions to the Exclusive Remedy Requirements of Workers' Compensation Statutes, 96 Harv. L. Rev. 1641, 1650-51 (1983) (hereafter "Exceptions") (observing that "many courts [have adopted] an exception to the exclusive remedy rule in the case of torts intentionally inflicted on workers by employers" by concluding that intentional torts "fall outside the statutory scheme because they are not accidental or employment related as required by the statutes"); McGinn v. Valloti, 525 A.2d 732, 735 (Pa. Super. 1987) (concluding that, in determining whether nature of employer's conduct gives rise to cause of action, Court should "examine whether the 'intentional wrong' is one that is not normally expected to be present in the workplace") Brady v. Safety-Kleen Corp., 576 N.E.2d 722 (Ohio 1991) (concluding that action for intentional tort was not preempted by legislation because intentional tort "necessarily occurs outside the employment relationship"); id. at 727 (reiterating that "an employer's deliberately injurious act did not arise out of the employment relationship, was not a natural hazard of employment and therefore, *ipso facto*, fell outside the Workers' Compensation Act") (citing Blankenship v. Cincinnati Milacron Chemicals, Inc., 433 N.E.2d 572 (Ohio 1982)); discussion *infra* n. 22.

7

quarters was "not such a fortuitous, untoward or unexpected happening as to constitute an accident").[11] Thus, following the 1972 amendments' replacement of the term "accident" the Pennsylvania Courts began to question the continued appropriateness of excepting even certain deliberate misconduct from immunity.[12]

Initially, the Courts - including the Pennsylvania Supreme Court itself - continued to hold that the Act does not preclude tort recovery where the employer's conduct rises to the level of an intentional tort. See Kline v. Arden H. Verner Co., 469 A.2d 158, 160 (Pa. 1983) (stating that case involving intentional tort was "inapposite simply because the workmen's compensation law does not address losses incurred by intentional injury by employee *or employer*") (emphasis added);[13] Tsarnas v. Jones & Laughlin Steel Corp., 412 A.2d 1084, 1097 (Pa. 1980) (stating that

---

[11] See also Sumski v. Sauquoit, 66 Lackawanna Jurist 122-23 (Cmnwlth. Ct. 1965) (recognizing intentional tort exception where employer knowingly exposed employee to toxic agent and deliberately misrepresented safety). The Sumski Court concluded that an injury resulting from such conduct could not be considered an "accident" because it was the result of the employer's planned and deliberate requirement and imposition of conditions which, in view of the legal restrictions and industrial knowledge, made the injury foreseeable.

[12] There is no legislative history suggesting an intent that the 1972 amendments address an intentional tort exception. There is, however, significant legislative history indicating that the amendments were intended to improve workers' compensation by including work-related diseases and to harmonize the Act with the Occupational Disease Act. See, e.g., O'Connell, Intentional Employer Misconduct, 49 U. Pitt L. Rev. at 1137-1140 (discussing legislative history and detailing statutory amendments intended to encompass occupational diseases and "provide more expansive coverage for injured workers"); id. at 1139-40 (concluding that legislature intended no implication to intentional tort exception by removal of the accident requirement).

[13] In Kline, the Pennsylvania Supreme Court considered whether an employee injured in a fall from a ladder and compensated while unable to return to work was entitled to further compensation from his employer for continuing injury (impotence) caused by the negligence of a co-employee. The plaintiff asserted that because the Act does not provide compensation for impotence he was entitled to maintain an action against his employer. The Court disagreed. See 469 A.2d at 159-160 (citing prior cases holding that actions for injuries outside the Act's compensation scheme are barred by its exclusivity provisions, and concluding that exclusivity

"purpose of [the Act] was to . . . close to the employee . . . any recourse against the employer in tort for negligence") (quoted with approval in Kline, 469 A.2d at 159-60); Gertz v. Rohm & Haas, 1985 WL 384540 (Pa. Cmmwlth Ct. Feb. 6, 1985) (noting that the court "conducted an exhaustive survey" of the creation of and amendments to the Act and concluded that the 1972 amendments did not affect the intentional tort exception theretofore recognized in Pennsylvania);[14] Koslop v. Cabot Corp., 622 F.Supp. 222, 224 (M.D. Pa. 1985) (noting that "the weight of authority supports the continued recognition of the intentional tort exception [to the 'exclusivity' provisions of the Act]").[15]

---

provision does not offend the due process provisions of the Pennsylvania Constitution). In so doing, the Court *expressly* distinguished this co-employee negligence case, "clearly within the scope of the Act", from an intentional tort case. See id. at 160 (distinguishing Dolan v. Liton's Lunch, 152 A.2d 887 (1959)).

[14] The Philadelphia County Court further held that, based upon its extensive case review, it "would frame the issues as whether or not the plaintiff's alleged injury . . . was the result of a pattern of intentional, deliberate, egregious conduct by an employer which cannot be characterized as arising naturally in the course of employment." Id., 1985 WL 384540 at *642. See also *supra* nn. 7, 10. Cf. Schneider v. Rohm and Haas Co., 1982 WL 656, *1 (Pa. Cmmwlth. Ct. Nov. 16, 1982) ("The rationale for the intentional tort exception to the Workmen's Compensation Act's exclusivity provisions is that the intentional infliction of an injury by an employer is not an 'injury arising out of the course of the employee's employment.'") (citations omitted).

[15] The Koslop Court expressly "disagree[d]" with defendant's position that the "1972 amendments to the Act eliminated the intentional tort exception." 622 F.Supp. at 224 (quoting Jones v. P.M.A. Insurance Co., 495 A.2d 203, 204 (Pa. Super. 1985) (stating that "the exclusive protection provided by the . . . Act does not exclude a suit for an intentional tort")); id. (noting the "[c]onsistent and strong support for the exception . . . found in the Third Circuit"). Following Evans, *supra* n. 9, it held that allegations that an employer failed to abide by safety standards did not state a claim within the intentional tort exception to the exclusive remedy provision, but that disregard of a safety consultant's recommendations *could*. See id. at 225. (concluding that allegations of employer's general awareness of the hazardous conditions at the work site (including violations of safety standards) are insufficient absent allegations of intent to cause injury or "belief that injury was substantially certain to result") (citing Kohr v. Raybestos-Manhattan, Inc., 626 F.Supp. 20 (E.D. Pa. 1985)). Cf. Prosser, Law of Torts, § 8 at 31 (4th ed.

9

During this time, the focus of the cases interpreting the Pennsylvania statute was on their varied criteria for the intentional tort exception.  Compare Neal v. Carey Canadian Mines, Ltd., 548 F. Supp. 357 (E.D. Pa. 1982) (permitting intentional tort exception where employer "blatently disregarded" known risks and adopting "substantially certain" test as measure for determining application of Act to employer's conduct)[16] with Higgins v. Clearing Machine Corp., 496 A.2d 818, 821 (Pa. Super. 1985) (excusing employer as additional third-party defendant in suit against punch-press machine manufacturer, despite allegations that injury resulted from operation of unguarded punch press machine in repeated violation of OSHA regulations, and distinguishing intentional failure to provide a safe workplace and "neglect of known dangerous condition" from intent to cause injury to plaintiff) (relying upon Evans).[17]

---

1971) (observing that in the context of tort litigation "intent" extends "not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does").

[16]  In Neal, the employer rejected the findings of its medical expert, and declined to either warn workers of the expert's conclusion that employees were at significant  risk of occupational cancer or take protective measures.  See id. at 379.  Cf. id. at 377 (noting that outrageous conduct standard for award of punitive damages under Pennsylvania law is "willfully, maliciously or so carelessly as to indicate wanton disregard of the rights of the party injured"); Restatement (Second) of Torts, § 500 comments a, f (characterizing willfulness as involving "an easily perceptible danger of death or substantial physical harm").

[17]  Although perhaps influenced by the employer's status as a third-party defendant, the linguistic clouding of justice in this case is nonetheless troubling.  That is, the Court characterized an employer's violation of government safety regulations as merely "neglect" of a known dangerous condition, thus within the exclusivity protections of the Act.  See, e.g., Arizona Copper Co. v. Hammer, 250 U.S. 400, 423 (1919) (discussing at length the rationale, justice and constitutionality of worker compensation schemes because the inherent nature of certain occupations and their working conditions are such that occasional, unforeseeable injuries will result "without particular fault on anybody's part"); id. (explaining, in moral and "law and economics" terms, the appropriateness of placing liability for unavoidable and unforeseeable injuries on employers as most efficient distributors of that risk, costs of which should be incorporated into cost of product rather than borne by unfortunate employees or society at large).

The Third Circuit ultimately expressed dismay regarding the inconsistencies and ambiguities of the Commonwealth's case law and urged the Pennsylvania Supreme Court to adopt a definitive formulation of its law on allegedly intentional workplace injuries "as soon as the opportunity present[ed] itself." Wilson v. Asten-Hill Manufacturing Co., 791 F.2d 30, 32, 34 (3d Cir. 1986) (detailing disagreement in lower court decisions regarding intentional tort exception following 1972 amendment).

Soon after, in Poyser v. Newman & Co., Inc., 522 A.2d 548 (Pa. 1987), a majority of the Pennsylvania Supreme Court concluded that, under the exclusivity provisions of the Workers' Compensation Act, an employer is cloaked in complete immunity from common law liability. More specifically, the Court held that an employer is entitled to judgment on the pleadings even where the employee's injury is caused not only by the employer's willful disregard of government safety regulations, but also its deliberate and knowing exposure of a particular

---

See also, *e.g.*, Milwaukee v. Miller, 144 N.W. 188, 191 (Wis. 1913) (discussing intent of workers' compensation legislation to cover "injuries happening through inadvertent failure, without real moral turpitude").

However, the extension of immunity to an employer who deliberately and recklessly violates government safety regulations thoughtfully enacted for the protection of employees, thus intentionally creating unnecessarily unsafe working conditions and foreseeable, substantial risk - all for reasons of economic self-interest - comports with neither the scope nor the purposes of the Act. Higgins' attempt to resolve these tensions by a bright-line distinction between an employer's intent to violate safety regulations and intent to injure *(i.e.*, assault in a fit of pique) a particular employee should not pass muster. For an employer who intentionally creates unsafe working conditions and then, as it must, requires particular employees to go about their duties, may well, dependent upon the circumstances of the case, place itself outside the purposes of the Act and manifest a sufficient intent to injure (under, for example, the "substantial certainty" test). Cf. Koslop, *supra* n. 14 (distinguishing (a) violation of safety regulations and general "awareness" of dangerous conditions insufficient to state claim, from (b) failure to follow recommendations of safety consultant, possibly evidencing substantial certainty of injury).

employee to foreseeable injury.[18]  In expressly rejecting *any* intentional tort exception to Workers' Compensation Act preclusion, the Court cited (1) the "historical *quid pro quo*" nature of the exclusive remedy provision and (2) the absence of any express legislative provision for an employer's intentionally-caused harm.  522 A.2d at 550-551.  The Poyser Court went on to recognize the existence of dissent and other states' exceptions for intentional wrongdoing, but indicated this result was compelled by due deference to the Pennsylvania legislature.[19]

---

[18]  See 522 A.2d at 549.  In Poyser, the plaintiff lost part of his finger to a spinning saw blade machine which the employer required to be operated without the feeding device specified by safety regulation, and which the employer had previously required to be hidden from OSHA inspectors.  Plaintiff alleged that employer had caused his injury by both willfully disregarding safety regulations and by deliberately exposing him to a known hazard.  See 522 A.2d at 549.  Nonetheless, the majority held that even an injury caused by "deliberate derelictions" of the employer remained within the exclusivity provisions of the Act.

Subsequent decisions' reference to the "disregard" of statutory duties (rather than the intentional creation of unnecessary and substantial risk to a particular employee) in their discussions of Poyser suggests the continuing influence of the problematic distinction drawn by the Superior Court in Higgins.  See, *e.g.*, Martin v. Lancaster Battery Co., Inc., 606 A.2d 444, 446 (Pa. 1992) (characterizing violation of safety regulations as "tolerance" of dangerous conditions but crafting narrow exception); Shetterly v. Sony Electronics, Inc., 2005 WL 2219473 (W.D. Pa. September 13, 2005) (noting that Poyser determined that the Act's exclusivity provision bars a plaintiff from bringing an intentional tort claim against an employer despite allegations of disregard of safety regulations and exposure to a known hazard).  See also discussion of Higgins, *supra* n. 17.

[19]  522 A.2d at 551 ("The appellant's argument is an interesting one; but it is one that must be resolved by the General Assembly, not this Court.").

This Court would respectfully disagree with the reasoning of the Poysner decision. The Supreme Court describes the historical *quid pro quo* as an exchange of "a statutory, no-fault system of compensation" for an employer's *blanket* immunity from liability for any injury and, in support, cites repeatedly to its prior decision in Kline, 469 A.2d 158 (1983).  See, *e.g.*, Poyser, 522 A.2d at 550 (citing Kline, 469 A.2d at 159, as stating that the Act "provides the exclusive means by which a covered employee can recover against an employer for injury in the course of his employment").  Critically, however, the majority decision ignores Kline's express statement that the Act does not apply to intentional torts.  See *supra* text at note 13.  This express acknowledgment must, of course, be understood to inform, and to circumscribe, the decision's

12

Since that time, the Pennsylvania Courts have reaffirmed this interpretation of the Act,[20]

---

more general language. Moreover, because Kline addressed co-employee negligence and uncompensated injury, the Court's mention of the scope of employer intentional tort liability was part of its background discussion, framing its understanding of the Act and Pennsylvania law (*i.e.*, dicta). At bottom, the Supreme Court in Poyser purports to reiterate Kline, while imposing an interpretation of the Act flatly contrary to that which it acknowledged in Kline and outside the scope of the Kline decision. See Poyser, 522 A.2d at 550-51.

Secondly, the majority concluded that it ought not meddle where the Act provides no express exception for an employer's intentional disregard of risk, violation of law, infliction of harm or the like. Poyser, 522 A.2d at 551 (declining to "engraft upon the [WCA] an exception the legislature did not see fit to put there"). As was noted in dissent, this position was inconsistent with the Court's prior construction of the Act. See Poyser, id. at 552 (Larsen, J., dissenting) (noting that the Court previously read into the Act an exception to employee compensation where the *employee* violated the law, which exception was adopted by the legislature twelve years later). More importantly, despite an absence of evidence of any intervening legislative intent to expand preemption, the majority premised its holding on the legislature's failure to expressly exclude circumstances historically *understood to be outside the scope* of the Act. See 522 A.2d at 552 (Larsen, J., dissent) (noting that from 1916 through 1983 the Court had expressed its understanding of the exception as closing recourse against employers in tort for *negligence*). See also Anderson v. Carnegie Steel Co., 99 A. 215, 216 (Pa. 1916) (recognizing legislation as applying to "actions at law for damages resulting from the *negligence* of employers") (emphasis added); *supra* text at nn. 12-15 (discussing Pennsylvania cases). Finally, the majority's assertion that the legislature's explicit exception of *employees'* intentional tortious conduct and its silence on *employer* intentional torts signals the legislature's intent that the latter be within the scope of the Act's preemption is a *non sequitur* given the legislative history. See Alston v. St. Paul Ins. Co., 612 A.2d 421, 425 (Pa. 1992) (Cappy, J., concurring) (agreeing with dissent filed by J. Larsen and joined by J. Papadakos in Poyser and noting that "there was no commensurate need to specifically exempt intentional tortious conduct of the employer" since the purpose and scope of the Act extended only to employer *negligence*) (citing Kline, 469 A.2d at 159-60)).

[20] See Alston v. St. Paul Ins. Co., 612 A.2d 421 (Pa. 1992); Snyder v. Specialty Glass Products, Inc., 658 A.2d 366 (Pa. Super. 1995); Papa v. Franklin Mint Corp., 583 A.2d 829 (Pa. Super. 1990); Blouse v. Superior Mold Builders, Inc., 526 A.2d 798 (Pa. Super. 1987) (holding that where employer removed warning labels from toxic chemicals and assured employee they were safe, Act remained exclusive remedy, as there is no intentional tort exception).

Cf. Martin v. Lancaster Battery Co. Inc., 606 A.2d 444 (Pa. 1992) (construing narrow exception where employer intentionally misrepresented results of blood lead levels to employee exposed to lead fumes, thus delaying discovery of, and aggravating, injury.); id. at 446-48 (carefully noting that employee was seeking compensation for aggravation of injury vs. "work-

13

and, in 1989, the Pennsylvania Supreme Court extended its reasoning to hold that no exception to the exclusivity provision of the Occupational Disease Act exists for injuries to workers caused by alleged employer intentional tort.[21]

In the Pennsylvania case most similar to the one at hand, <u>Wendler v. Design Decorators, Inc.</u>, the Superior Court granted summary judgment in favor of an employer and against the Estate of a twenty-two-year-old seasonal employee who fell to his death while hanging holiday decorations from an aerial bucket, despite OSHA's subsequent investigation and citation of the employer for safety violations. <u>See</u> 768 A.2d 1172 (Pa. Super. 2001). In <u>Wendler</u>, the complaint alleged willful violations of OSHA and negligence and/or gross negligence where an improperly-trained co-employee drove the lift truck under a railroad bridge without lowering the bucket. The Superior Court, in reaching its decision, concluded that <u>Kline</u> and <u>Poyser</u> preclude recovery from an employer for even intentional wrongdoing. It therefore limited decedent's mother's recovery,

---

related injury itself"). The <u>Martin</u> Court observed that "There is a difference between employers who *tolerate workplace conditions that will result in a certain number of injuries or illnesses* and those who actively mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care." <u>Id.</u> at 448 (emphasis added). It further concluded that there are certain risks an employee should not have to assume. <u>See also</u> <u>Millison v. E.I. duPont de Nemours & Co.</u>, 501 A.2d 505, 516 (N.J. 1985) (same); <u>id.</u> (observing that some employer misconduct "goes beyond the bargain struck by the Compensation Act").

[21] <u>See</u> <u>Barber v. Pittsburgh Corning Corp.</u>, 555 A.2d 766 (Pa. 1989) (affirming summary judgment for employer which refused to implement asbestos dust containment measures recommended by its engineering team despite awareness of risks to employees, and which deliberately misrepresented to employees that workplace was safe); <u>id.</u> at 768-69 (rejecting "substantial certainty" standard). In so holding, the Court reversed the Superior Court decision concluding that the legislature could not have intended to "provide an absolute shield to tort liability or to encourage, or at least allow, reprehensible intentional wrongdoing reasonably calculated to lead to severe personal injury or death of employees." 529 A.2d 491, 495 (Pa. Super. 1987).

14

as administratrix, to the funeral expenses received under the Act.  See 768 A.2d at 1176.

As the Pennsylvania Courts have acknowledged, other states have taken different approaches.[22]  In addition, numerous courts and commentators have addressed the moral hazards

---

[22] For example, several state courts have adopted a "substantial certainty" test as their guideline for intentional tort exceptions to workers' compensation act preclusion.  See, e.g., Bazley v. Tortorich, 397 So.2d 475 (La. 1981); Woodson v. Rowland, 407 S.E.2d 222 ( N.C. 1991); VerBouwens v. Hamm Wood Prods., 334 N.W.2d 874 (S.D. 1983); Beauchamp v. Dow Chem. Co., 398 N.W.2d 882 ( Mich. 1986); Blankenship v. Cincinnati Milacron Chems., Inc., 433 N.E.2d 572 (Ohio 1982).  The legislatures of the latter two states - Michigan and Ohio - responded to the Courts' establishment of the "substantial certainty" test with a more limited intentional tort exception.

Other state courts have adopted similar standards for their intentional tort exceptions. See e.g. Mandolidis v. Elkins Industries. 246 S.E.2d 907, 912 (W.Va. 1978) (noting that "the carelessness, indifference and negligence of an employer may be so wanton as to warrant a judicial determination that his ulterior intent was to inflict injury"); Lusk v. Monaco Motor Homes, Inc., 775 P.2d 891 (Or. 1989) (adopting "conscious weighing" test for intentional tort exception, focusing on whether employer had opportunity to weigh consequences of act and know that someone would be injured); Thompson v. Bohlken, 312 N.W.2d 501, 505 (Iowa 191) (adopting three elements for "wanton neglect": (1) knowledge of peril, (2) knowledge that injury is probable, and (3) conscious failure to avoid the peril); id. (holding that such "serious and willful misconduct" exceeds even gross or culpable negligence and involves "the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences"). In response to the Mandolidis decision, in 1983 the West Virginia legislature amended its employers' immunity statute to permit civil tort liability where the employer has "subjective realization" of a condition presenting a "high degree of risk and a strong probability of serious injury or death" and violating a "safety statute, rule or regulation . . . or [an industry] safety standard").  See W.Va. Code § 23-4-2 (Supp. 1991); see also Mayles v. Shoney's Inc., 405 S.E.2d 15 (W.Va. 1990).

The immunity provisions of Arizona and Texas legislation provide an option to sue in tort for willful misconduct; in Kentucky, Oregon, Washington and West Virginia, an employee may sue for intentional injury.  Failure to obey safety statutes/regulations results in percentage increases of statutory awards in Arkansas, Kentucky, Missouri, New Mexico, North Carolina, Ohio, South Carolina, Utah and Wisconsin.  In California and Massachusetts, serious and willful employer misconduct results in additional recoveries of 50% and 100%, respectively.  See Achieving Safer Workplaces by Expanding Employers' Tort Liability Under Workers' Compensation Laws, 19 N. Ky. L. Rev. 457, 461 (1992).  It is important to note that many of these provisions were adopted in response to state court decisions.  Cf. Exceptions, 96 Harv. L. Rev. at 1657 (explaining that "legislatures not forced to confront workers' compensation issues

15

and troubling inequities in a system of compensation that relieves an employer from bearing the full cost of intentionally unsafe operations and/or practices. They have also noted (1) the economic inefficiencies of this rule, *e.g.*, its adverse effects on the insurance risk pool;[23] and (2) the undermining effects such system can be expected to have on governmental policies intended to protect workers and promote job safety.[24] Finally, they have spoken to the construction's incompatibility with the intended scope and underlying policy of the Workers' Compensation Act (*i.e.*, to enhance compensation to injured employees and increase economic incentives for workplace safety).[25] This Court notes in addition that, in a statutory preemption of common law

---

[generally] avoid[] them" owing to, *e.g.*, "lack of . . . understanding of the complexities, . . . stalemate between the preferences of divergent interest groups, and . . unfounded fears [regarding state attractiveness to employers]") (citing Report of the National Commission on State Workmen's Compensation Laws at 121-25 (1972)).

[23] See, *e.g.*, Birklid v. Boeing Co., 904 P.2d 278 (Wash. 1995) (holding that employee's remedy for deliberate injury - knowing exposure to toxic substances - should not be limited by statute and that employers who engage in egregious conduct should not burden and compromise the industrial insurance risk pool); Handley v. Unarco Industs. Inc., 463 N.E.3d 1011 (Ill. 1984) (concluding that "legislative balance" was not "meant to permit an employer who . . . commits an intentional tort to use te act as a shiled against liability [and shift] liability throughout the system on other innocent employers").

[24] See, *e.g.*, Exceptions, 96 Harv. L. Rev. at 1650-58; O'Connell, Intentional Employer Misconduct, 49 U. Pitt. L. Rev. at 1146 (noting that "faced only with the prospect of marginally increased workers' compensation insurance premiums, employers can now intentionally maintain working conditions which maximize business efficiency at the expense of employee safety"); Schroeder, Workers' Compensation, 58 Notre Dame L. Rev at 895 (noting that employers face little deterrence from violation of safety regulations so long as marginal cost/efficiency benefits out-distance costs of non-compliance, including workers' compensation recovery); id. at 905-06; Blankenship, 433 N.E.2d at 577 (opining that granting immunity to employers who intentionally harm their employees "would be tantamount to encouraging such conduct" and cannot be reconciled with the purpose of the workers' compensation system).

[25] See, *e.g.*, O'Connell, Intentional Employer Misconduct, *supra* n. 6; Boggs v. Blue Diamond Coal Co., 590 F.2d 655, 659 (6th Cir. 1979) (discussing historical exchange of "common-law remedies of dubious value" for benefits designed to save off "destitution" and

remedies premised on *quid pro quo*, at some point the disparity between the foreclosed rights and the prescribed remedy becomes so great as to violate fundamental constitutional protections.[26]

Nonetheless, "Poyser remains the law of Pennsylvania." Alston v. St. Paul Ins. Cos., 612 A.2d 421, 425 (Pa. 1992) (Cappy, Chief J., concurring) (expressing disagreement with the majority opinion in Poysner and agreement with the dissent's position "that the [Workers'] Compensation Act was intended to provide exclusive remedies for employer negligence and not intentional tortious acts committed by [the] employer").[27]  While the Court feels compelled to

---

concluding that, "in light of . . . history and policy [of Act] every presumption should be on the side of preserving" common law rights in the absence of "compelling statutory language or social policy justification").

[26]  More particularly, due process and equal protection concerns arise when a class of individuals is deprived of the fundamental right to freedom from the intentional infliction of bodily injury and when their civil damages remedy is supplanted without sufficient other consideration and/or sufficiently countervailing state interests.  The effect of the Act as presently interpreted is to permit Pennsylvania employers to hazard the safety of their employees with impunity in exchange for payment of a statutorily-fixed fee.   Immunity from suit is *carte blanche*, without regard to moral blameworthiness.

There is unquestionably a legitimate state interest in removing work-related accidents which are the result of mere chance, negligence or even gross negligence from the court system.  When, however, statutory provisions are construed (a) to permit, and even encourage, willful calculations that under-protect the safety and even the lives of workers; and (b) to exchange blanket intentional tort immunity for minimal compensation, then federal constitutional issues arise which may not be resolved by a state's interpretation of its own legislative acts.

[27]  Cf. id. at 426 (Larson, J.) (dissenting) (regretting extension of immunity to insurance carrier's independent contractors and prospects of continued expansion of exclusivity such that "the injured employee will have no remedy whatsoever - - no matter how intentional or despicable the act that caused the injury"); cf. also Barber, 529 A.2d at 496-97 (finding it "difficult to believe" that the legislature intended to provide "wholesale immunity" to employers); id. at 497-98 (admonishing that where Court "believe[s] that our legislature would not have intended a certain result, we are not serving them by abstaining from so holding due to a misguided fear of usurping their legislative role" and that, "rather than allow unjust results to continue until such time as they can rectify the situation by amendment", Court must in the meantime "attempt[] to provide a just result and a just interpretation of the legislature's

17

comment on the troubling and constitutionally-suspect nature of Poyser's interpretation of the Commonwealth's Workers' Compensation Act, because the parties have neither raised nor briefed this issue, we leave its resolution to another day.

### III. CONCLUSION

It is recommended that the Motion to Dismiss filed by Employer be granted as, under current Pennsylvania law, Plaintiffs have failed, despite their allegations of knowing imposition of unnecessarily unsafe work conditions and requirements on the decedent, as well as willful and unlawful violation of safety provisions, and neglect of statutory duties, to state a claim for relief against Employer.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: January 13, 2006　　　　　　　　　/s/ Lisa Pupo Lenihan  
　　　　　　　　　　　　　　　　　　　　LISA PUPO LENIHAN  
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

cc:　　The Honorable Terrence F. McVerry  
　　　　United States District Judge

---

enactment").

Francis M. Moore, Jr. Esq.
Peter J. Mansmann
Mansmann & Moore
220 Grant St.
Pittsburgh, PA 15219
Counsel for Plaintiffs

Anthony J. Rash, Esq.
Dickey, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222
Counsel for Defendant Employer

Jerry S. Eisenberg
301 Grant St.
1225 One Oxford Centre
Pittsburgh, PA 15219
Counsel for Defendant Scrubgrass Generating Co., L.P.